UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHERYL LYNN DAVIS,        )
        )
    **Plaintiff,**        )
        )      **NO. 3:14-cv-02266**
**v.**        )      **CHIEF JUDGE CRENSHAW**
        )
**NANCY BERRYHILL,[1]**        )
**Acting Commissioner of**        )
**Social Security,**        )
        )
    **Defendant.**        )

## MEMORANDUM OPINION

Pending before the Court is Cheryl Lynn Davis's Motion for Judgment on the Administrative Record (Doc. No. 12), to which the Commissioner of Social Security ("Commissioner") has responded (Doc. No. 15). Plaintiff filed a reply to Defendant's response. (Doc. No. 16.) Upon consideration of the parties' briefs and the transcript of the administrative record (Doc. No. 11),[2] and for the reasons set forth below, Plaintiff's Motion for Judgment will be DENIED and the decision of the Commissioner will be AFFIRMED.

## I. Magistrate Judge Referral

In order to ensure the prompt resolution of this matter, the Court will VACATE the referral to the Magistrate Judge.

---

[1]Nancy Berryhill became acting Commissioner for the Social Security Administration on January 23, 2017, and is therefore substituted as Defendant. *See* Fed. R. Civ. P. 25(d).

[2]Referenced hereinafter by "Tr." followed by the page number found in bolded typeface at the bottom right corner of the page.

## II.  INTRODUCTION

Plaintiff filed an application for supplemental security income ("SSI") under Title XVI of the Social Security Act on December 7, 2011, alleging disability onset as of September 10, 2009, which was amended to August 4, 2011, due to back pain, osteoporosis and diverticulitis, depression, fibromyalgia, and arthritis.  (Tr. 11, 48, 76, 132, 203.)  Plaintiff's claims were denied at the initial level on April 24, 2012, and on reconsideration on July 6, 2012.  (Tr. 77, 83.)  Plaintiff subsequently requested *de novo* review of her case by an administrative law judge ("ALJ").  (Tr. 86, 94.)  The ALJ heard the case on November 14, 2013, when Plaintiff appeared with counsel and gave testimony.  (Tr. 12, 26-47.)  Testimony was also received by a vocational expert.  (Tr. 39-45.)  At the conclusion of the hearing, the matter was taken under advisement until February 14, 2014, when the ALJ issued a written decision finding Plaintiff not disabled.  (Tr. 8-18.)  That decision contains the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since 2009 (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disk disease, obesity, and carpal tunnel syndrome (20 CFR 416.920©).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with occasional balancing, stooping, kneeling, crouching and crawling and occasionally climbing ramps and stairs. No climbing ladders, ropes, and scaffolds. She could handle and finger frequently bilaterally, but could not work around unguarded moving machinery and unprotected heights.

5.    The claimant is capable of performing past relevant work as a cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.    The claimant has not been under a disability, as defined in the Social Security Act, since December 7, 2011, the date the application was filed (20 CFR 416.920(f)).

7.    The claimant's subjective complaints, including pain, have been evaluated as required by the applicable regulations and rulings.

(Tr. 13, 14, 17.)

On September 17, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence based on the record as a whole, then those findings are conclusive. Id.

### III. REVIEW OF THE RECORD

The following summary of the medical record is taken from the ALJ's decision:

The claimant's primary complaints revolve around back pain, but she has had remarkably little treatment for such complaints. She has not sought any treatment from her neurologist since August 2011, when she last saw Physician Assistant Casamo, complaining of increased back pain radiating to the left leg. Examination was stable. She was advised to obtain a second opinion regarding recommended back surgery, which she did not want to undergo. She weighed 226 pounds. She had a slight 4/5 weakness in the left lower extremity due to pain. Gait was guarded. She had slightly decreased sensation to light touch on the lateral left foot. Exhibit 3F. Decompressive laminectomy[3] had been recommended by Dr. McNamera in January 2010 for radiculopathy,[4] but she did not elect to have that surgery, and did not return

_____

[3]Laminectomy is the excision of the posterior arch of a vertebra. Dorland's Illustrated Medical Dictionary 1003 (32nd ed. 2012).

[4] Radiculopathy is the "disease of the nerve roots, such as from inflamation or impingement by a tumor or a bony spur." Dorland's at 1571.

to see Dr. McNamera thereafter. Exhibit 2F. She occasionally saw primary care providers for back or leg pain. An August 2011 visit to Dr. Hays for a three month check-up reported that she was overall doing very well. She reported occasional polyarthralgias,[5] which had improved, and low back pain. She was obese and slightly tender over the low back. The last visit to that provider occurred in October 2011, when she complained of back pain. She had declined surgery offered by Dr. McNamera. Although she reported carpal tunnel symptoms for two years, that visit was the first time those symptoms were mentioned to Dr. Hays. She weighed 232 pounds, was tender over the back with moderately decreased range of motion over the thoracic spine and severely decreased range of motion of the lumbar spine. She had positive Phalen[6] and Tinel's[7] tests. She had evidence of muscle spasm and an antalgic[8] gait. Impression included bilateral carpal tunnel syndrome (based on one time reported symptoms alone) and degenerative disk disease. Exhibit 6F. Although the claimant continued to request refills of medication by telephone, a November 2012 note indicated that the claimant had not been seen in over a year, and Dr. Hays refused to refill any more prescriptions unless she was seen in the office. Exhibit 10F. There is no evidence that she returned to see Dr. Hays.

She then began primary care with Fast Pace Urgent Care, but mainly was seen for sinus and congestion. Other than weight (222 pounds to 244 pounds), the only objective signs noted revolved around her sinus and respiratory complaints during most visits. She complained of left hip pain in November 2012, for which she received an injection, but she had full range of motion of the back and hips on examination. She was tender over the left trochanter.[9] She had thrush[10] and low back pain in January 2013, at which time she did have decreased range of motion of the back and tenderness. Gait was normal. She complained of right upper back pain in April 2013 radiating to the neck and shoulder. She had tenderness over the right shoulder without any other objective signs. In May 2013, she complained of left ankle pain of two weeks' duration, and back pain. She sat comfortably during the

---

[5]Polyarthralgias pertains to pain in many different joints. Dorland's at 150, 1487.

[6]Refers to a positive sign for carpal tunnel syndrome. Dorland's at 1717.

[7]A Tinel sign "indicates a partial lesion or the beginning regeneration of the nerve." Dorland's at 1716.

[8]Antalgic is defined as "counteracting or avoiding pain, as a posture or gait assumed so as to lessen pain." Dorland's at 97.

[9]Trochanter is "either of the two processes below the neck of the femur." Dorland's at 1970.

[10]Thrush is a yeast infection that causes white patches in the mouth and on the tongue. See http://www.webmd.com/oral-health/tc/thrush-topic-overview#1(last viewed August 10, 2017).

evaluation. Musculoskeletal and neurological examinations were normal. Impression was low back pain, fatigue, and myalgias/fibromyalgia. Visits in September and November 2013 were for sinus complaints. Physical examination was normal except for signs related to her respiratory symptoms. Specifically, she did not have decreased range of motion of any joint or her back, and gait was normal. She was advised to stop smoking and to lose weight. Exhibits12F and 13F.

She has a remote history of colon resection for diverticulosis. Follow-up in recent years has been very limited. She reported doing great, so cancelled her appointment in October 2011with her specialist, Dr. Chokski. She was not seen again until April 2013, after a recent endoscopy. She reported no difficulty swallowing, no heartburn, and dysphagia. Her only complaint was constipation. No examination was performed. She was advised to follow a liquid diet for a couple of days. Impression was gastroesophageal reflux disease, constipation, and gastritis. Exhibits 5 F and 11F.

She was referred for consultative physical and psychological evaluations. The physical evaluation was performed by Dr. Rinehart in February 2012. There is no indication that Dr. Rinehart received any medical records to review. She reported back pain since a motor vehicle accident in 1995 (but worked thereafter). She mainly stayed at home and did a little housekeeping. Interestingly, she told Dr. Rinehart that "surgery was never considered to be a viable option." Since Dr. McNamera had recommended surgery in 2010, which she had refused, that would appear to be a misstatement of the facts by the claimant. She had not seen her primary care provider, Dr. Hays for pain medications for several months, since her insurance had lapsed. She reported that she could stand for 45 minutes, sit for 35 minutes, and walk for 25 minutes, but could do no lifting. In the Review of Systems, she complained exclusively of back problems. Abdominal pain and seizures were not mentioned. She smoked one pack of cigarettes a day. On examination, she was alert and oriented. Blood pressure was 134/80. She weighed 223 pounds at a height of 65 inches. She was able to get up and down from the examination table. She had decreased range of motion of the back and all lower extremity joints, although range of motion of the upper extremity joints and cervical spine were normal. There was no swelling or warmth of any of the joints. She was a little unsteady. Sensory examination was intact. Reflexes were 0-1+. Muscle strength of the upper extremities was 4-5/5 and lower extremities was 3/4 due to pain. Impression was chronic back pain and fibromyalgia (although none of the criteria for that disorder is mentioned. SSR 12-2.). Based on this one-time examination, Dr. Rinehart found that the claimant could do no sitting, standing, walking, or lifting in an eight hour work day. Exhibit 7F. No weight is accorded this opinion, since the examination findings are remarkably different from those reported from any treating source, and the misinformation given him by the claimant. Those limitations would result in the claimant recumbent eight hours a day, a level of limitation not even alleged by the claimant.

She also underwent a consultative psychological examination by Dr. Gale in February 2012, although the claimant told Dr. Gale that she primarily was disabled due to physical problems. She was not even sure if psychological symptoms interfered with the ability to work. She took Lexapro for anxiety and depression, prescribed by her primary care provider. She had no history of any treatment by a mental health professional. She reported living with her adult son in his condominium. She did her own laundry, light housework, dusting, light cooking, and watched television and read. She talked to friends on the telephone. She occasionally went out to eat with friends. She had a normal gait and posture. There was no unusual motor behavior. She was told she could get up and change positions during the evaluation as needed, but never got up. She had not taken any pain medication prior to the interview. She was preoccupied because of pain and bills. She reported periods of depression for six months. She had minor difficulty with attention. She could recall two of three items after five minutes. She had difficulty with serial three and seven testing. Memory was grossly intact. Abstraction was normal. She could do basic computations. There were no neurocognitive deficits. Impression was depressive disorder, N.O.S., with anxiety. Dr. Gale found no impairment of understanding and remembering, social interaction , or adaptation, but noted mild impairment of concentration and persistence, which might be more severe with pain (not based on any psychological impairment). Exhibit 8F.

The claimant testified at the hearing that she completed eighth grade in school, but later got her high school diploma. She completed a medical billing course by mail, but never worked at a job in that field. She worked at Publix as a cashier full time for three years; she received long term disability for 18 months after she stopped working. She had not worked since 2009. She could not work any longer because of pain in her back. She could not sit or stand for long periods. Pain was at a level of eight on a scale of ten with medication. She had a burning feeling and could not focus. Pain was aggravated by bending, sitting long, or standing over ten minutes. Pain radiated to her hips, knees, and ankles. Stretching aggravated it. No position was comfortable. She had to move from side to side. She went from the recliner to the couch. She laid down four hours a day to help control the pain. She had difficulty concentrating over 30 minutes while watching television or movies. Pain caused lack of focus. Bad and good days were equal in number; on bad days, she did not get out of bed or shower. She testified that she had fibromyalgia, with hand, shoulder, and ankle pain. She had difficulty sleeping at night. She was depressed and anxious about what she could not do any longer. She did dishes and laundry; her son had someone come in to clean. She felt too bad to socialize with friends. She could no longer ride horses, play sports, or embroider. She read, but had difficulty concentrating. She missed being able to garden. When asked about declining recommended surgery, she said that the doctor could not 100% guarantee a cure, so she did not have it. She had not had any specialized treatment since she lost her insurance after 18 months of long term disability. She could not move after having epidural steroid injections. She said that a discogram almost killed her; it hurt so bad.

In the function report completed by the claimant in December 2011, contained at exhibit 5E, she said that she could not stand in one place for over a few minutes. She fixed her coffee in the morning, showered, took her medications, microwaved food, read, watched television, did laundry and dishes. She had difficulty putting on her pants, and took showers because she could not get out of the tub. She cleaned her own bathroom, wiped down countertops, and dusted, but could not do yard work, sweeping, or mopping. She could drive short distances without problem. She grocery shopped. She could handle her own finances. She read, watched television, and listened to the radio. She talked to friends on the telephone, and occasionally went out to eat. She could not lift over seven pounds. She did not handle stress well or changes in routine. She wore a brace on her hand.

. . . .

[The RFC] adopts the opinion of the state agency physician, Dr. Montague-Brown. Exhibit 4A. The opinion of consultative examiner Rinehart is given no significant weight for the reasons given above. Exhibit 7F. His limitations would essentially result in the claimant being recumbent the entire day, which is not supported anywhere in the medical evidence, or the claimant's own reported activities.

(Tr. 14-17.)

## IV. CONCLUSIONS OF LAW

### A. Standard of Review

This Court reviews the final decision of the Commissioner to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." Brooks v. Comm'r of Soc. Sec., 531 F. App'x 636, 641 (6th Cir. 2013) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's

decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 473 (6th Cir. 2016) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." Miller, 811 F.3d at 833 (quoting Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 722 (6th Cir. 2014)).

### B. The Five-Step Inquiry

The claimant bears the ultimate burden of establishing an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). The Commissioner considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2) A claimant who does not have a severe impairment will not be found to be disabled.

3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Parks v. Soc. Sec. Admin., 413 F. App'x 856, 862 (6th Cir. 2011) (citing Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . ." Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 628 (6th Cir. 2016) (quoting Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004)).

The Commissioner can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. See Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. Wright, 321 F.3d at 615-16; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's

*prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. <u>Anderson</u>, 406 F. App'x at 35; <u>see</u> <u>Wright</u>, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the Commissioner must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. 42 U.S.C. §§ 423(d)(2)(B), (5)(B); <u>Glenn v. Comm'r of Soc. Sec.</u>, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Plaintiff's Statement of Errors

Plaintiff argues that the ALJ erred (1) by failing to properly weigh and evaluate the medical opinion evidence; (2) by failing to perform a proper credibility analysis; and (3) by improperly relying on an incomplete hypothetical question posed to the vocational expert. (Doc. No. 13, at 13, 19, 22.)[11] Plaintiff requests that the Commissioner's decision be vacated and that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. <u>Id</u>. at 22.

Sentence four of 42 U.S.C. § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." <u>Mowery v. Heckler</u>, 771 F.2d 966, 973 (6th Cir. 1985). Additionally, a court can reverse

---

[11]Citations to the parties' briefs reference the Court's ecf pagination.

the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. <u>Faucher v. Secretary</u>, 17 F.3d 171, 176 (6th Cir. 1994). <u>See</u> <u>also</u> <u>Newkirk v. Shalala</u>, 25 F.3d 316, 318 (1994). Plaintiff's statement of errors is addressed below.

**1. The ALJ's residual functional capacity determination is unsupported by substantial evidence because the ALJ erred in weighing and evaluating the medical opinion evidence.**

Plaintiff contends that in determining Plaintiff's RFC the ALJ erred "by failing to weigh the opinion of treating spine specialist Dr. McNamara, erred by relying solely upon the opinion from a non-examining physician to determine the RFC, and erred by according no weight to the opinion from consultative examiner Dr. Rinehart." (Doc. No. 13, at 14.) In response, Defendant contends that Dr. McNamara's November 2009 opinion concerning Plaintiff's abilities was not relevant because Plaintiff's alleged disability onset date was August 4, 2011, and that the ALJ therefore was not obligated to provide an analysis of that opinion. (Doc. No. 15, at 6-7.) Defendant contends that the ALJ did consider Dr. McNamara's treatment of Plaintiff during the relevant period. <u>Id</u>. Defendant also contends that the ALJ gave appropriate reasons for declining to give any weight to Dr. Rinehart's opinion, and such reasoning is supported by substantial evidence. <u>Id</u>. at 8. Specifically, Defendant contends that Dr. Rinehart's examination findings were remarkably different than those reported by other doctors; Dr. Rinehart's opinion was inconsistent with Plaintiff's own allegations; and Dr. Rinehart's opinion was based on inaccuracies and misstatements. <u>Id</u>. at 8-9. Defendant further contends that an ALJ may consider the opinion of a non-examining physician in making a disability determination. <u>Id</u>. at 10.

Social security regulations and rulings establish the framework for an ALJ's consideration of medical opinions.  See 20 C.F.R. §§ 404.1527, 416.927; SSR 96-2p.  Acceptable medical sources are divided into three categories: treating sources; examining but non-treating sources; and non-examining sources.  Id.  A treating source "means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation" consistent with accepted medical practice, and "who has, or has had, an ongoing treatment relationship with you."  20 C.F.R. §§ 404.1527, 416.927.  An examining, but "nontreating source . . . has examined the claimant but does not have, or did not have, an ongoing treatment relationship with h[im]."  Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007) (internal citation and quotation marks omitted).  A "nonexamining source is a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case."  Id. (internal citation and quotations marks omitted).

"When evaluating medical opinions, the SSA will generally give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [him]."  Id. (internal citations and quotations marks omitted).  "Moreover, when the physician is a specialist with respect to the medical condition at issue," the specialist's "opinion is given more weight than that of a non-specialist."  Johnson v. Comm'r of Soc. Sec., 652 F.3d 646, 651 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527([c])(5)).

The ALJ is generally required to accord the opinion of a claimant's treating physician substantial deference.  Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2).  Such deference, however, is due only when a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence" before the ALJ. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." Buxton, 246 F.3d at 773. Likewise, an ALJ may reasonably find that a medical opinion that is inconsistent with other evidence in the record or that is internally inconsistent is unreliable. See Vorholt v. Comm'r of Soc. Sec., 409 F. App'x 883, 887-889 (6th Cir. 2011); see also White v. Comm'r, 572 F.3d 272, 286 (6th Cir. 2009) (holding that an ALJ's finding that a medical opinion conflicts with other evidence in the record is a sufficient reason to discount the opinion); 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (providing that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Additionally, an opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. See Young v. Sec'y of Health & Human Servs., 925 F.2d 146, 151 (6th Cir. 1990); see also Francis v. Comm'r Soc. Sec. Admin., 414 F. App'x 802, 804 (6th Cir. 2011) (noting that a physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all."). Rather, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [an ALJ] will give that opinion." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); see also Bell v. Barnhart, 148 F. App'x 277, 285 (6th Cir. 2014) (declining to give weight to a doctor's opinion that was supported by only the claimant's reported symptoms).

Ultimately, the determination of disability is "the prerogative of the Commissioner, not the treating physician." Warner, 375 F.3d at 390 (quoting Harris v. Heckler, 726 F.2d 431, 435 (6th Cir. 1985)). As such, a treating physician's opinion that a patient is disabled is not entitled to any special

significance. <u>See</u> 20 C.F.R. §§ 404.1527(d)(1)(3), 416.927(d)(1)(3); <u>Bass</u>, 499 F.3d at 511; <u>Sims v. Comm'r of Soc. Sec.</u>, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) (recognizing that "the determination of disability [is] the prerogative of the Commissioner, not the treating physician.")

If the ALJ decides not to accord the opinion of a treating physician controlling weight, the ALJ relies on a number of factors-including the length of the treatment relationship, the frequency of evaluation, nature and extent of the treatment relationship, how well supported by medical evidence the treating physician's opinion is, the consistency of the treating physician's opinion with the record as a whole, and whether the treating physician is a specialist-to determine how much weight to give the treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Where the ALJ finds that the treating physician is not entitled to controlling weight, the regulations require the ALJ to give "good reasons" for the weight given to a treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Consequently, a decision denying benefits has to state "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188 at *5 (1996). This procedural safeguard "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." <u>Wilson</u>, 378 F.3d at 544.

Although courts prefer that they do so, ALJs need not explicitly mention in their decisions every factor under 20 C.F.R. §§ 404.1527©, 416.927© when determining the weight to give the opinion of a treating physician. <u>See</u> <u>Adams v. Astrue</u>, No. 1:07-cv-2543, 2008 WL 9396450, at *3, n.5 (citing <u>Thacker v. Comm'r of Soc. Sec.</u>, 99 F. App'x 661, 665 (6th Cir. 2004)). Nevertheless,

ALJs must still conduct an analysis sufficient for the court to engage in a "meaningful review of the ALJ's application of the [treating physician] rule." <u>Wilson</u>, 378 F.3d at 544.

Plaintiff argues that the ALJ failed to consider the November 2009 opinion of Dr. McNamara, Plaintiff's treating spine specialist, who opined, "At the present time, [Plaintiff] is a cashier at Publix. Given her low back condition, I think she needs to try to pursue long-term disability as the standing and lifting required by the grocery business will not be suitable for her." (Doc. No. 13, at 14; Tr. 223-24.) Plaintiff contends that this omission is significant because this opinion is at odds with the ALJ's determination that Plaintiff could perform light work and that the ALJ failed to provide good reasons for rejecting this opinion. (Doc. No. 13, at 15.)

The ALJ noted that in January 2010 Dr. McNamara recommended a decompressive laminectomy procedure for radiculopathy, but that Plaintiff elected not to have the surgery. (Tr. 14, 227.) The ALJ also noted that Plaintiff did not return to see Dr. McNamara after January 2010. (Tr. 14, 234, 295.) Although the ALJ did not discuss Dr. McNamara's November 2009 opinion, that opinion predated the alleged onset date by almost two years. "Courts have held that an ALJ's failure to mention a treating physician's opinion, which was based on the claimant's condition before the alleged onset date, is harmless error." <u>Mohssen v. Comm'r of Soc. Sec.</u>, No. 12-14501, 2013 WL 6094728, at *11 (E.D. Mich. Nov. 20, 2013) (citing <u>Heston v. Comm'r of Soc. Sec.</u>, 245 F.3d 528, 535 (6th Cir. 2001)); <u>Burke v. Comm'r of Soc. Sec.</u>, No. 1:15-CV-83, 2016 WL 1156596, at *4 (W.D. Mich. Mar. 24, 2016) ("The Court finds no error in the ALJ's failure to address [the plaintiff's treating physician's] opinion, which was given more than two years before plaintiff's alleged disability onset date . . . .") (citing <u>Mohssen</u>, 2013 WL 6094728, at *11); <u>Moore v. Colvin</u>, No. 14-12310, 2015 WL 4066735, at *4 (E.D. Mich. July 2, 2015) ("[F]ailure to mention even a treating

source's opinion predating the alleged onset is, at most, harmless error."); Owings v. Colvin, 133 F. Supp. 3d 985, 1002 (M.D. Tenn. 2015) ("This court has previously held that the ALJ did not err in not considering the opinion of a treating physician who did not treat the claimant during the relevant time. Absent any authority to the contrary, the ALJ was not required to consider [the treating physician's] opinion because there is no bridge between it and the relevant period at issue." citing Litteral v. Colvin, 2014 WL 6997889, at *17 (M.D. Tenn. Dec. 30, 2014)); Austin v. Colvin, No. 3:13-CV-629-PLR, 2015 WL 1208638, at *10 (E.D. Tenn. Mar. 16, 2015) (where the plaintiff's treating physician's statement that the plaintiff should not work "'because he is lifting and this would not be in his best interest,'" the district court noted, "First, this statement was made prior to Plaintiff's alleged onset date . . . and therefore is not illustrative of any functional limitations between the alleged onset date and the date of hearing.")

Further, "[f]irst and foremost, the opinion of disability falls within an area exclusively reserved to the Commissioner and is not entitled to treatment as a medical opinion." Massey v. Colvin, No. 3:16-CV-00887, 2017 WL 56629, at *6 (M.D. Tenn. Jan. 5, 2017), report and recommendation adopted sub nom. Massey v. Soc. Sec. Admin., No. 3:16-RCV-R00887, 2017 WL 1366918 (M.D. Tenn. Jan. 20, 2017) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d); Stamps v. Comm'r of Soc. Sec., No. 1:15-CV-0557, 2016 WL 4500793, at *5 (W.D. Mich. Aug. 29, 2016) (holding that the ALJ is not bound by physician's opinion that the claimant cannot work). "The Social Security Act instructs that the ALJ–not a physician--ultimately determines a claimant's RFC." Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 439 (6th Cir. 2010); see also Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations

belongs to the Commissioner."). "A physician's opinion that a claimant is disabled is entitled to no deference because it is the prerogative of the Commissioner, not the treating physician, to make a disability determination." Gaskin v. Comm'r of Soc. Sec., 280 F. App'x 472, 474 (6th Cir. 2008); Bass, 499 F.3d at 511 ("no special significance will be given to opinions of disability, even if they come from a treating physician") (internal quotations marks and citation omitted); see Massey, 2017 WL 56629, at *6 (finding that the ALJ did not err by declining to discuss the treating physician's opinion that "the Plaintiff is unfit for duty, absent an accommodation," as that opinion "treads upon the Commissioner's province of determining disability and is not entitled to weight as a medical opinion.").

Accordingly, the Court concludes that if the ALJ committed any error in declining not to discuss Dr. McNamara's opinion, such error was harmless.

Plaintiff next argues that the ALJ erred by according no weight to the opinion of consultative examiner Dr. Rinehart, while completely adopting the opinion of Dr. Montague-Brown, the non-examining State agency physician. (Doc. No. 13, at 16.) The Sixth Circuit has long held that "the regulation requiring an ALJ to provide 'good reasons' for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another." Wright v. Colvin, No. 1:15-cv-01931, 2016 WL 5661595, at *9 (N.D. Ohio Sept. 30, 2016) (citing Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 506-07 (6th Cir. 2006)). Likewise, the ALJ is "under no special obligation" to provide great detail as to why the opinions of the nonexamining providers "were more consistent with the overall record" than the examining, but nontreating providers. Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 440 (6th Cir. 2012). As long as "the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies

the necessary requirements. . . ." Id. It is the function of the ALJ to resolve the conflicts between the medical opinions. Justice v. Comm'r of Soc. Sec., 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins. The fact that Justice now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence.").

Here, Dr. Rinehart's examination of Plaintiff reflected that Plaintiff was able to get up and down from the examination table. (Tr. 15, 341.) Plaintiff's range of motion of her feet, ankles, knees and hips could flex to approximately 90 degrees, but not any further due to pain. Id. Plaintiff also had a decreased range of motion in her back. Id. However, Plaintiff's range of motion of her upper extremities and cervical spine were normal. Id. There was no swelling or warmth of any of her joints. Id. Plaintiff's mobility was somewhat poor, and she was a little unsteady. Id. Plaintiff's sensory examination was intact, her reflexes were 0-1+, and her muscle strength of the upper extremities was 4-5/5 and of the lower extremities was 3/4 due to pain. Id. Dr. Rinehart's assessment was chronic back pain and fibromyalgia. Id. Based upon his examination of Plaintiff, Dr. Rinehart opined that Plaintiff could not do any type of sitting, standing, lifting, or walking in an eight-hour work day. (Tr. 15-16, 342.)

The ALJ accorded no weight to Dr. Rinehart's opinion, stating that Dr. Rinehart's examination findings were remarkably different from those reported by other doctors. (Tr. 16.) The ALJ noted that Dr. Rinehart did not indicate if he received any medical records to review. (Tr. 15.) The ALJ noted that in August 2011 Plaintiff saw Physician Assistant Anthony Casamo, complaining of increased back pain radiating down her left leg. (Tr. 14, 230.) Plaintiff's examination was stable, and a review of her images showed degenerative disk disease. (Tr. 230.) Plaintiff was advised to obtain a second opinion regarding recommended back surgery, which she did not want to undergo.

(Tr. 14, 230, 234.)  Plaintiff had a slight 4/5 weakness in the left lower extremity due to pain, her gait was guarded, and she had a slightly decreased sensation to light touch on the lateral left foot.  (Tr. 14, 232.)  The ALJ noted that in August 2011 Plaintiff saw her primary care provided, Dr. James Hayes, for a three month check-up, who reported that Plaintiff was overall doing very well.  (Tr. 14, 300.)  Plaintiff reported having continued lower back pain and having occasional polyarthralgias, which had improved.  Id.  Plaintiff last saw Dr. Hayes in October 2011, complaining of back pain.  (Tr. 14, 295.)  Dr. Hayes noted that Plaintiff had tenderness over the thoracic and lumbar spine, with moderately decreased range of motion of the thoracic spine and severely decreased range of motion of the lumbar spine.  (Tr. 14, 298.)  Plaintiff had positive Phalen's and Tinel's tests and had evidence of muscle spasm and an antalgic gait.  Id.

The ALJ noted that Plaintiff later began treatment at an urgent care center, and in November 2012, while being treated for left hip pain, Plaintiff's examination reflected that she had no limitation of movement of her lumbar spine and that there was no pain in all ranges of motion.  (Tr. 15, 394.)  Plaintiff also had no limitations in her hips.  Id.  In May 2013, Plaintiff complained of left ankle pain and back pain.  (Tr. 15, 380.)  Plaintiff ambulated without assistance and sat comfortably on the examination table without difficulty or evidence of pain.  (Tr. 15, 382.)  In July 2013, Plaintiff's musculoskeletal and neurologic examinations showed that there was no evidence of muscle weakness or reduced range of motion and her gait was normal; in November 2013, Plaintiff had no musculoskeletal problems, and her gait was normal.  (Tr. 15, 374, 406.)

The ALJ also accorded no weight to Dr. Rinehart's opinion because Dr. Rinehart's limitations would result in Plaintiff being "recumbent eight hours a day, a level of limitation not even alleged by the claimant."  (Tr. 16.)  Plaintiff told Dr. Rinehart that she could stand for 45 minutes, sit for 35

minutes, and walk for 25 minutes. (Tr. 15, 339.) Plaintiff reported that she could not lift anything, but said that she could wash dishes and do some laundry. (Tr. 339.) Plaintiff reported to Dr. Gale that she did her laundry, some light housework, some light cooking, and some washing of dishes. (Tr. 16, 345.) Dr. Gale noted that Plaintiff had a normal gait and posture and that she did not display any unusual motor behavior. (Tr. 16, 346.) Dr. Gale told Plaintiff that she could get up and change positions during the evaluation as needed due to her pain, but she never did. Id. Plaintiff had not taken any pain medication prior to the interview. Id.

Further, the ALJ accorded no weight to Dr. Rinehart's opinion because it was based upon misinformation given to him by Plaintiff. (Tr. 16.) The ALJ noted that Plaintiff told Dr. Rinehart that "surgery was never considered to be a viable option," but that because Dr. McNamara recommended surgery in 2010, which she had refused, that statement to Dr. Rinehart "would appear to be a misstatement of the facts by the claimant." (Tr. 15, 339.) As to Dr. Rinehart's assessment that Plaintiff suffered from fibromyalgia, this diagnosis was based on Plaintiff's reporting that she suffered from fibromyalgia. (Tr. 15, 339, 341.) Citing Social Security Ruling 12-2p, 2012 WL 3104869 (S.S.A. July 25, 2012), the ALJ noted that Dr. Rinehart's examination report lacked the specific findings to support that diagnosis. (Tr. 15.)[12]

_____

[12]In <u>Walters v. Comm'r of Soc. Sec.</u>, No. 1:14-CV-481, 2015 WL 1851451 (S.D. Ohio Apr. 22, 2015), <u>report</u> and <u>recommendation</u> <u>adopted</u>, No. 1:14CV481, 2015 WL 5693640 (S.D. Ohio Sept. 29, 2015), <u>appeal</u> <u>dismissed</u> (July 8, 2016), the court explained:

> The agency will find that a person has a[] [medically determinable impairment ("MDI")] of [fibromyalgia ("FM")] if a physician diagnosed FM and provides the evidence described under § II.A or § II.B of the Ruling, and the physician's diagnosis is not inconsistent with the other evidence in the individual's case record. <u>Id</u>. Under § II. A., the agency "may find that a person has an MDI of FM if he or she has all three of the following": 1. A history of widespread pain-that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and

Based upon a review of the medical record, the Court finds that the ALJ properly considered and analyzed Dr. Rinehart's opinion in conjunction with the other medical evidence and that the ALJ did not err in assessing no weight to Dr. Rinehart's opinion, as the ALJ's determination was supported by substantial evidence.

Plaintiff also argues that the ALJ erred in relying on the opinion of a non-examining State agency doctor. (Doc. No. 13, at 16.) Defendant contends that the ALJ properly relied on the opinion of non-examining State agency physician, Dr. Karla Montague-Brown. (Doc. No. 15, at 10.) "An ALJ may consider the opinion of a non-examining physician designated by the Secretary in determining whether a claimant has medically determinable impairments." Neal v. Astrue, No. 3:08-0464, 2009 WL 2135792, at *7 (M.D. Tenn. July 16, 2009) (citing Reynolds v. Secretary, 707 F.2d 927, 930 (6th Cir.1983)). "'State agency medical and psychological consultants . . . are highly qualified physicians [and] psychologists . . . who are also experts in Social Security disability evaluation,' and whose findings and opinions the ALJ 'must consider . . . as opinion evidence.'" Lee

---

axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back) that has persisted (or that persisted) for at least 3 months' and which "may fluctuate in intensity and may not always be present."; 2. "At least 11 positive tender points on physical examination" which must be found in specified locations; and 3. Evidence that other physical and mental disorders that could cause the symptoms or signs were excluded, such as "imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor)." Id., at *2-3. A person may be found to have an MDI of FM under § II.B. if she has all three of the following criteria: 1. A history of widespread pain as described under § II. A. 12. "Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome;" and 3. Evidence such as that described in § II.A.3 that "other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded[.]" Id., at 3.

Id. at *5.

v. Comm'r of Soc. Sec., 529 F. App'x 706, 712 (6th Cir. 2013) (citation omitted); 20 C.F.R. § 416.9279(e)(2)(I). "In appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996); see also Hoskins v. Comm'r of Soc. Sec., 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").

In arriving at her opinion, Dr. Montague-Brown considered Plaintiff's function reports; her work history; her seizure questionnaire; the consultative psychological examination by Dr. Gale; Dr. Rinehart's medical opinion; and medical records from Dr. Amit Choksi, Vanderbilt Bone and Joint Clinic, Maury Regional Hospital, Dr. Brian Jackson and Dr. Hayes. (Tr. 64-67.) Plaintiff's daily activities reflected that she attended to her self-care needs with some difficulty due to physical problems, prepared simple meals, completed light household chores, drove short distances, went grocery shopping, and sometimes went out to eat with friends. (Tr. 68-69, 72.) Dr. Montague-Brown found Plaintiff partially credible. (Tr. 69.) In assessing Plaintiff's credibility, Dr. Montague-Brown found Plaintiff's activities of daily living and the location, duration, frequency and intensity of her pain and symptoms as the most informative factors. Id. Dr. Montague-Brown opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; that Plaintiff had no push and/or pull limitations; that Plaintiff could climb stairs, balance, stoop, kneel, crouch, and crawl occasionally, but never climb ladders; that Plaintiff was unlimited in reaching and feeling, but limited in handling

and fingering; and Plaintiff had no environmental limitations except to avoid all exposure to hazards. (Tr. 70-72.)

Dr. Rinehart's opinion was deemed "too restrictive" "due to the fact that even the most severely restricted RFC would have some degree of walking, standing or sitting." (Tr. 65-66, 70, 72, 73.) Dr. Montague-Brown stated that Dr. Rinehart's opinion relied "heavily on the subjective report and symptoms and limitations provided by [Plaintiff]" and that the totality of the evidence did not support Dr. Rinehart's opinion, as Dr. Rinehart's opinion was an overestimate of the severity of Plaintiff's restrictions/limitations and was "based only on a snapshot of [Plaintiff's] functioning." (Tr. 73.)

The RFC does not need to be based on a particular medical opinion. Brown v. Comm'r of Soc. Sec., 602 F. App'x 328, 331 (6th Cir. 2015). Nor does the RFC need to correspond to a physician's opinion because the Commissioner has the final authority to make determinations or decisions on disability. Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013). Accordingly, the Court concludes that after evaluating the entire record, the ALJ considered that Dr. Montague-Brown's opinion was consistent with, and supported by, the medical record as a whole, and properly relied on Dr. Montague-Brown's opinion in determining Plaintiff's RFC. The Court finds no error in the ALJ's evaluation of the State agency medical consultant's opinion.

**2. The ALJ's credibility determination is unsupported by substantial evidence.**

Plaintiff contends that the ALJ erred in evaluating Plaintiff's credibility. (Doc. No. 13, at 19.) Specifically, Plaintiff argues that the ALJ focused too strongly on Plaintiff's statement to Dr. Rinehart about her being recommended for surgery and that the ALJ did not properly consider Plaintiff's daily activities. Id. at 20-21. In response, Defendant asserts that Plaintiff's inconsistent

statements cast doubt on her veracity and that her refusal to have surgery showed that she did not view surgery as a viable option because her pain was not as severe as she claimed. (Doc. No. 15, at 12-13.) Defendant also asserts that the ALJ properly considered Plaintiff's daily activities as one factor in evaluating Plaintiff's credibility. Id. at 13.

Although the ALJ, not the court system, is tasked with evaluating a witness' credibility, credibility findings must be "grounded in the evidence and articulated in the determination or decision." SSR 96-7P, 1996 WL 374186 at *4 (S.S.A. July 2, 1996); Rogers v. Commissioner, 486 F.3d 234, 247 (6th Cir. 2007). In addition to the objective evidence, the ALJ should consider the following factors when assessing the credibility of a claimant's statements regarding her symptoms:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P, 1996 WL 374186 at * 3.  Under SSR 96–7p, the ALJ is required to "consider" the seven-listed factors, but there is no requirement that the ALJ discuss every factor.  See White v. Commissioner, 572 F.3d 272, 287 (6th Cir. 2009); see also Coleman v. Astrue, No. 2:09-cv-36, 2010 WL 4094299, at * 15 (M.D. Tenn. Oct.18, 2010) (finding that "[t]here is no requirement [ ] that the ALJ expressly discuss each listed factor."); Roberts v. Astrue, No. 1:09-cv-1518, 2010 WL 2342492, at * 11 (N.D. Ohio June 9, 2010) (finding that "the ALJ need not analyze all seven factors contained in SSR 96-7p to comply with the regulations").

Credibility determinations concerning a claimant's subjective complaints are within the province of the ALJ.  See Gooch v. Secretary of Health & Human Servs., 833 F.2d 589, 592 (6th Cir.1987).  The Court does not make its own credibility determinations.  See Walters v. Commissioner, 127 F.3d 525, 528 (6th Cir. 1997).  The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ."  Kuhn v. Commissioner, 124 F. App'x 943, 945 (6th Cir. 2005).  The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard.  This is a "highly deferential standard of review."  Ulman, 693 F.3d at 714; see Warner, 375 F.3d at 392 (noting that credibility findings made by the ALJ are given great deference.).  "Claimants challenging the ALJ's credibility determination face an uphill battle."  Daniels v. Commissioner, 152 F. App'x 485, 488 (6th Cir. 2005); see Ritchie v. Commissioner, 540 F. App'x 508, 511 (6th Cir. 2013) (recognizing that "[w]e have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'")  "Upon review, [the Court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the Court] d[oes] not, of observing a witness's demeanor

25

while testifying." Jones, 336 F.3d 469, 476 (6th Cir. 2003). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." Buxton, 246 F.3d at 773; accord White, 572 F.3d at 287.

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." Rogers, 486 F.3d at 248. The Rogers court observed that Social Security Ruling 96-7p requires that the ALJ explain his or her credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Rogers, 486 F.3d at 248.

The ALJ noted that Plaintiff told Dr. Rinehart "that 'surgery was never considered to be a viable option,'" although Dr. McNamara recommended surgery in 2010, which Plaintiff had refused. (Tr. 15, 17-18.) The ALJ noted that such statement "would appear to be a misstatement of the facts by the claimant." (Tr. 15, 18.) Plaintiff admits that she "did say this to Dr. Rinehart" and that "surgery was in fact a viable option recommended by Dr. McNamara," but states that "Plaintiff *could* have meant surgery was not a viable option for her." (Doc. No. 13, at 20) (emphasis added.) However, this possible alternative interpretation is not sufficient to challenge the ALJ's credibility determination, which is accorded great weight and deference. Jones, 336 F.3d at 476; Warner, 375 F.3d at 392. The ALJ properly considered these inconsistent statements when assessing Plaintiff's credibility. Further, the ALJ properly considered Plaintiff's activities as one factor in the evaluation of her credibility. See Temples v. Comm'r of Soc. Sec., 515 F. App'x 460, 462 (6th Cir. 2013) ("[T]he ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples'

testimony was credible."); 20 C.F.R. § 416.929(a) (2013). The ALJ noted that Plaintiff's "reported activities to the consultative examiners and in the function report are not nearly as restrictive as [Plaintiff] reported at the hearing." (Tr. 17.) The ALJ noted that Dr. Gale's consultative report reflected that Plaintiff did her own laundry, light housework, dusting, light cooking, and that she occasionally went out to eat with friends. (Tr. 16.) Dr. Gale noted that Plaintiff had a normal gait and posture, and there was no unusual motor behavior. Id. Dr. Gale told Plaintiff that she could get up and change positions during the evaluation as needed, but she never did so. Id. Plaintiff also had not taken any pain medication prior to the interview. (Tr. 16, 345.)

In construing the record as a whole, the Court concludes that the ALJ properly evaluated Plaintiff's credibility based upon substantial evidence in the record.

### 3. The ALJ's Step 4 determination is unsupported by substantial evidence because the ALJ relied upon an incomplete hypothetical question asked to the vocational expert.

Plaintiff contends that the ALJ's reliance upon the testimony of a vocational expert in determining that Plaintiff can perform her past relevant work as a cashier cannot provide substantial evidence to support the ALJ's decision, as it was based upon an incomplete hypothetical question. (Doc. No. 13, at 22.) Specifically, Plaintiff contends that had the ALJ properly incorporated Dr. McNamara's and Dr. Rinehart's opinions into the RFC, not relied upon the opinion of the non-examining State agency physician, and properly evaluated Plaintiff's credibility, a more proper hypothetical question could have been submitted to the vocational expert. Id. However, as discussed supra, the ALJ did not commit any error in declining to discuss Dr. McNamara's opinion, in assessing no weight to Dr. Rinehart's opinion, in relying on Dr. Montague-Brown's opinion in determining Plaintiff's RFC, and in evaluating Plaintiff's credibility. Thus, the ALJ's hypothetical question was

proper, and substantial evidence supported the ALJ's finding that Plaintiff could perform the past relevant work as cashier based on the testimony of the vocational expert at the hearing. See Temples, 515 F. App'x at 462 ("The ALJ's hypothetical questions were not flawed because the opinions of Dr. Jain and Dr. Bunch were not supported by the record. Therefore, the ALJ was not required to incorporate these opinions in the hypothetical questions that were submitted to the vocational expert."); Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'") (citation omitted); Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512-13 (6th Cir. 2010). Accordingly, this statement of error is without merit.

## V. CONCLUSION

In light of the foregoing, Plaintiff's Motion for Judgment on the Administrative Record will be DENIED and the decision of the Commissioner will be AFFIRMED.

An appropriate order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE